WILLIAM THOMPSON, Appellant, *against* MARTHA E. GRAY, Administratrix, &c., of William A. Gray, Deceased, Respondent.

(Decided June 5th, 1882.)

Upon the dissolution of a copartnership, one of the members of it filed a certificate and published a notice that its business would be continued by him in the firm name, but it did not appear from the certificate, that the copartnership was within the terms L. 1854, c. 400. He did, however, thereafter continue the business in the name of the former firm. *Held*, that by so continuing the business and purchasing goods upon credit in that name, he did not become liable to the seller in an action for obtaining such goods by fraudulent representations.

APPEAL from a judgment of the General Term of the Marine Court of the City of New York affirming a judgment of that court entered upon the verdict of a jury rendered by direction of the court.

The facts are stated in the opinion.

*Wakeman & Latting*, for appellant.

*Winfield, Leeds & Morse*, for respondent.

CHARLES P. DALY, Chief Justice.—This judgment should be affirmed. The plaintiff's cause of action, as set forth in the complaint, was that the defendant William A. Gray

represented to the plaintiff that he was a member of. a firm doing business in this city, under the name of "John Gray's Sons," composed of himself and another of the sons of John Gray; that he represented to the plaintiff, through others, that the said firm was solvent; that believing said representations to be true, the plaintiff sold him a bill of merchandise, which he would not have done but for the said representations, and received therefor his promissory notes, made in the name of and signed "John Gray's Sons;" that when the sale was made, and these notes were given, there was no such firm as John Gray's Sons; that the firm of that name had been dissolved several years previously, and that William A. Gray continued thereafter to use the name of said firm contrary to the statute and with intent to defraud the plaintiff, and obtain from him goods by said fraud and false credit; that at the time of the sale and the giving of the notes William A. Gray was insolvent and knew himself to be so; and that three months thereafter and before the notes matured, he made an assignment to his father-in-law, preferring his father-in-law and other creditors in the assignment to the amount of $24,000, an amount more than sufficient to absorb all his assets.

No such cause of action as this was proved. All that was proved on the part of the plaintiff was that William A. Gray and Edward C. Gray, in the years 1875 and 1876 were engaged in business in this city, under the firm name of "John Gray's Sons;" that on or before the 12th of June, 1876, the firm was dissolved, Edward C. Gray retiring therefrom; that on that day William A. Gray filed a certificate in the County Clerk's office, in this city, setting forth the copartnership between himself and Edward C. Gray, stating that it had existed for seven months and twenty days; that it had been dissolved by Edward C. Gray retiring therefrom; that the business of said firm was to be continued by the remaining member, William A. Gray, and that he was the person then and thereafter dealing under the firm name of John Gray's Sons; a copy of which certificate, after the filing thereof, was, in the form of

a notice, published in *The Daily Register*, of this city, once a week for four successive weeks thereafter; and this continuation of the business by William A. Gray in the name of the former firm of John Gray's Sons was the representation, and the only one, relied upon by the plaintiff as fraudulent.

It appeared that the plaintiff knew nothing of any such firm as John Gray's Sons until after the purchase alleged to be fraudulent. The sale was not made by the plaintiff, but by A. Wakeman, Jr., who at the time was acting as the plaintiff's manager. Wakeman knew of the firm of John Gray's Sons from about the latter part of 1875. He knew William A. Gray, but the first business transaction that he had with him or the firm was by a sale of goods in July, 1879. He then went to the place of business, 111 Chambers Street, and asked for Mr. Gray. A person he was accustomed to see there, and whom he supposed to be a member of the firm, asked him what Mr. Gray, and he saw, as would appear from the evidence, William A. Gray, and effected a sale of Mexican hammocks, for which notes were given, which have been paid. This was in July, 1879. The sale relied upon as fraudulent was afterwards, on the 2d of August, 1879, and was also of hammocks. It was the one for which the two promissory notes referred to were given. No representation by William A. Gray to Wakeman, on either of these sales, was shown.

There was nothing to prove that either Wakeman or his principal relied upon Edward C. Gray's being then a member of the firm, or that either of them knew anything about him. On the contrary, Wakeman testified that he supposed the person of whom he inquired for Mr. Gray was one of the firm, until the failure, when he found he was not, and that the plaintiff then first learned who was represented by the name of John Gray's Sons. As I have already said, the only representation relied upon as false and fraudulent was William A. Gray's continuing the business in the name of the former firm of John Gray's Sons.

We have a statute in this state (L. 1833, c. 281), declaring it to be a misdemeanor for any person, except commercial partnerships located and transacting business in foreign countries (L. 1849, c. 347), to transact business in the name of a partner not interested in his firm, the object of the statute as declared in its title being to prevent persons transacting business in fictitious names, and for doing which under this statute a fine may be imposed, not exceeding one thousand dollars.  We have also a statute authorizing the continuation of copartnership names by firms having business relations with foreign countries, where the business is continued by some or any of the copartners or their assigns or appointees, upon complying with certain conditions, such as filing a certificate, etc. (L. 1854, c. 400).

The certificate filed by William A. Gray does not show that his firm was one the name of which might, under these statutes, be continued after the withdrawal of the other partner; for it does not state that the firm had business relations with foreign countries.  The certificate, therefore, filed by him, and the notice published, were of no effect. These acts gave him no authority to continue the business under the name of the former firm, and his doing so was an unlawful act for which he might have had imposed upon him a fine.

Whilst this is true, no such conclusion can be drawn from his acts as that claimed by the plaintiff, that he continued the firm name with the fraudulent intention of inducing those from whom he should thereafter purchase goods to suppose that Edward C. Gray still continued in the business; that the firm thereafter consisted of himself and Edward C. Gray or of himself and any other person or persons; for, on the contrary, by the certificate which he filed and the notice which he had inserted in *The Daily Register* he gave publicity to the fact, in the language of the certificate and of the advertisement, that he was the person then and thereafter dealing under the firm name of John Gray's Sons. What he did negatives the presumption of any such fraudulent intent as the one averred in the

complaint, that he continued to use the name of John Gray's Sons with a design to defraud the plaintiff, and obtain goods by said fraud and false credit; and this is all there was in the case. There was no foundation therefore for any such action. The judge properly directed the jury to find for the defendant, and the decision of the General Term of the Marine Court affirming the judgment for the defendant was correct.

VAN BRUNT and BEACH, JJ., concurred.

Judgment affirmed, with costs.